**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

NATHANIEL TYRONE HOWARD,  :

 Petitioner,      :
          CIVIL ACTION NO. 20-0496-JB-MU
          :
vs.         CRIMINAL NO. 18-0260-JB
          :
UNITED STATES OF AMERICA,
          :
 Respondent.

## REPORT AND RECOMMENDATION

This cause is before the Court on Petitioner Nathaniel Tyrone Howard's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 48) and the response of the United States (Doc. 54).[1] This action has been referred to the undersigned for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rule 72(a)(2)(R). Following consideration of all relevant pleadings in this case, it is recommended that Howard's § 2255 motion be **DENIED** without an evidentiary hearing. *Compare, e.g., Rosin v. United States,* 786 F.3d 873, 878 (11th Cir.) ("It is well-settled that the district court is not required to grant an evidentiary hearing when the defendant's claims are affirmatively contradicted by the record evidence, nor is a hearing required if the claims are grounded upon

---

[1]  Petitioner was initially invited to file a reply to the government's response not later than January 11, 2021 (*see* Doc. 50); however, this reply date was later moved to January 19, 2021 (*see* Doc. 53), when the government asked for additional time to file its response (*see* Doc. 52). To date, Howard has not filed a reply to the government's response. (*See* Docket Sheet).

generalizations that are unsupported by the record evidence."), *cert. denied,* __ U.S. __, 136 S.Ct. 429, 193 L.Ed.2d 320 (2015), and *United States v. Bejacmar*, 217 Fed.Appx. 919, 921 (11th Cir. Feb. 15, 2007)[2] ("[I]f the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous, a district court is not required to hold an evidentiary hearing.") *with Means v. Secretary, Dep't of Corrections,* 433 Fed.Appx. 852, 855 (11th Cir. July 12, 2011) ("[W]here 'the record refutes [a petitioner's] factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.'") (citation omitted)), *cert. denied,* 565 U.S. 1217, 132 S.Ct. 1580, 182 L.Ed.2d 198 (2012) and *Allen v. Secretary, Florida Dep't of Corrections,* 611 F.3d 740, 745 (11th Cir. 2010) ("A district court is not required to hold an evidentiary hearing if the claims 'are merely conclusory allegations unsupported by specifics,' . . . or 'if the record refutes the applicant's factual allegations or otherwise precludes habeas relief[.]'"), *cert. denied,* 563 U.S. 976, 131 S.Ct. 2898, 179 L.Ed.2d 1192 (2011).

## **FINDINGS OF FACT**

On September 27, 2018, Howard was indicted on one count of conspiracy to possess with intent to distribute more than 50 grams of methamphetamine (actual), commonly known as ICE, 21 U.S.C. § 846. (Doc. 1, PageID. 1). Through the indictment, Howard was advised that due to the quantity of methamphetamine (actual) attributable

---

[2]    "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

to him, he was subject to the penalty provisions set forth in 21 U.S.C. § 841(b)(1)(A).[3] (Doc. 1, PageID. 1). In addition to the language contained in the Indictment, the Government filed an Information on November 28, 2018, which advised Howard that pursuant to 21 U.S.C. § 851(a)(1),[4] he was subject to increased statutory sentencing—from 10 years to life to life without parole—because of two prior felony drug convictions, to wit: (1) a 2006 conviction out of this Court on two felony counts of possession with intent to distribute crack cocaine for which he was sentenced to a term of imprisonment; and (2) a 1999 conviction out of the Circuit Court of Mobile County, Alabama on a felony count of unlawful distribution of cocaine for which Howard was sentenced to a term of imprisonment. (*See* Doc. 23, PageID. 58).[5]

---

[3]    21 U.S.C. § 841(b)(1)(A)(viii) provides (and provided at the time of Howard's indictment) that in the case of a violation of subsection (a) of this section—subsection (a) making it unlawful for any person, among other things, to knowingly or intentionally possess with intent to distribute a controlled substance—involving 50 grams or more of methamphetamine, such person shall be "sentenced to a term of imprisonment which may not be less than 10 years or more than life[.]" *Id.*

[4]    Section 851 sets forth the procedure for establishing a Defendant's prior convictions for increased punishment and that procedure is the filing of an Information stating the convictions to be relied upon. *See* 21 U.S.C. § 851.

[5]    It is clear that pursuant to the enhanced penalty provisions of 21 U.S.C. § 841(a)(1)(A) that existed at this point in time (that is, before the enactment of the First Step Act) and the Government's notice of enhancement under § 851, Howard was subject to a statutory mandatory minimum sentence of life imprisonment in light of his two prior felony drug convictions. *Compare United States v. Hoffman,* 710 F.3d 1228, 1230 (11th Cir. 2013) (recognizing that § 841(b)(1)(A) provides that having 2 prior felony drug convictions "raises the mandatory minimum punishment for a § 841(a), (b)(1)(A) conviction [ ] from ten years' imprisonment to life imprisonment.") *with Means v. Adduci,* 2016 WL 4059708, *5 (N.D. Ala. July 5, 2016) (quoting the following language from § 841(b)(1)(A): "'If any person commits a violation of this subparagraph . . ., after *two or more* prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release . . . .'"), *report and recommendation adopted,* 2016 WL 4011726 (N.D. Ala. July 27, 2016). The First Step Act was enacted on December 21, 2018, *see United States v. Garcia,* 2019 WL 7503482, *1 (11th Cir. July 9, 2019), with Section 401 of the Act "ratchet[ing] down the (Continued)

On December 10, 2018, Howard filed a notice of intent to change his plea to guilty as to the sole count of the indictment (*see* Doc. 24, PageID. 61) and ten days later, on December 20, 2018, Howard entered a counseled guilty plea to conspiracy to possess with intent to distribute more than 50 grams of methamphetamine (actual), commonly known as ICE (*see* Doc. 28). As relevant here, the plea agreement included a provision incorporating by reference the Factual Resume, with Howard agreeing that the Factual Resume was true and correct. (Doc. 27, PageID. 72). The plea agreement also explained that the statutory maximum penalty Howard faced was life imprisonment

---

duration of certain mandatory statutory penalties and restrict[ing] the types of prior felonies that trigger such enhanced penalties." *United States v. Malone,* 2020 WL 4721244, *2 (S.D. Ala. Aug. 13, 2020); *compare id. with United States v. Means,* 787 Fed.Appx. 999, 1001 (11th Cir. Sept. 11, 2019) ("The First Step Act [] amended 21 U.S.C. § 841(b)(1)(A) by changing the types of prior convictions that trigger a mandatory penalty from one or more convictions for 'felony drug offense[s]' to one or more 'serious drug offense[s].'") and *United States v. Barber,* 2020 WL 373982, *1 (N.D. Fla. Jan. 22, 2020) ("[U]nder the First Step Act, only a drug-*trafficking* conviction can trigger an increased sentence, and even then, only if the statutory maximum sentence was ten years or more, the defendant actually served more than one year, and the defendant was released not more than 15 years before the new offense began."). As amended by the First Step Act, § 841(b)(1)(A) now provides as follows:

> If any person commits such a violation after a prior conviction for a serious drug felony or serious violent felony has become final, such person shall be sentenced to a term of imprisonment of not less than 15 years and not more than life imprisonment . . . . If any person commits a violation of this subparagraph . . . after 2 or more prior convictions for a serious drug felony or serious violent felony have become final, such person shall be sentenced to a term of imprisonment of not less than 25 years . . . .

21 U.S.C. § 841(b)(1)(A). As made clear in *Malone, supra,* "[s]ection 401 of the First Step Act expressly provide[d] that 'the amendments made by this section[] shall apply to any offense that was committed before the date of enactment of this Act, *if a sentence for the offense has not been imposed as of such date of enactment*.'" 2020 WL 4721244, at *2, quoting Pub.L. 115-391, § 401(c) (emphasis in original).

without the possibility of parole, that the Court would impose sentence and that the United States Sentencing Guidelines are advisory and do not bind the Court. (*See id.* at PageID. 73; *see also id.* at ¶ 14, PageID. 74 ("The defendant understands that this Plea Agreement does not create any right to be sentenced in accordance with the Sentencing Guidelines, or below or within any particular guideline range, and fully understands that determination of the sentencing range or guideline level, or the actual sentence imposed, is solely the discretion of the Court.")).[6] The plea agreement contains a Limited Waiver of Right to Appeal and Waiver of Collateral Attack, Howard acknowledging that he would not file a direct appeal or collaterally attack his conviction and sentence, except that he could raise on direct appeal that the sentence imposed was in excess of the statutory maximum or that the sentence constitutes an upward departure from the advisory guideline range and, further, he could claim ineffective assistance of counsel in a direct appeal or a § 2255 motion to vacate. (Doc. 27, at ¶ 23, PageID. 80-81).

Howard executed the plea agreement on December 11, 2018, specifically acknowledging the following: "I have consulted with my counsel and fully understand all my rights with respect to the offense charged in the Indictment pending against me. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this agreement, and I voluntarily agree to it. I hereby stipulate that the

---

[6] "The United States will provide all relevant sentencing information to the Probation Office for purposes of the pre-sentence investigation. Relevant sentencing information includes, but is not limited to, all facts and circumstances of this case and information concerning the defendant's conduct and background." (Doc. 27, at ¶ 15, PageID. 74).

Factual Resume,[7] incorporated herein, is true and accurate in every respect, and that

had the matter proceeded to trial, the United States could have proved the same

beyond a reasonable doubt."  (Doc. 27, PageID. 82-83 (footnote added)).

---

[7]    The Factual Resume reads, in relevant measure, as follows:

Robert Daw acted as a "middle-man" for the sale of methamphetamine (ICE), a Schedule II controlled substance, for **HOWARD** and others in the Conecuh County area. Daw contacted **HOWARD** and arranged for an individual who, unknown to Daw and **HOWARD,** was acting as a Cooperating Source (CS) to meet him at Daw's residence in Castleberry, Alabama, where the methamphetamine (ICE) sales took place.

In July 2017, the CS contacted Daw and placed an order for one ounce of methamphetamine (ICE). Daw agreed to broker the deal. On July 26, 2017, the CS traveled to Daw's residence where his meeting with Daw was surveilled by law enforcement agents. Moments later, **HOWARD** arrived and met with Daw and the CS. **HOWARD** retrieved approximately one ounce of methamphetamine (ICE) from a bag that contained approximately ¼ pound of methamphetamine (ICE) and sold it to the CS for $800.00. After this purchase, an Order to capture real time location (ping) data for **HOWARD**'s telephone was obtained. Agents began receiving the data on August 1, 2017.

On August 3, 2017, the CS received a telephone call from Daw and Daw told the CS that **HOWARD** was running low on his supply of methamphetamine (ICE) and would probably be obtaining more (re-upping). On August 4, 2017, agents monitored the ping for **HOWARD**'s telephone as he traveled from Conecuh County to the Columbus, Georgia area, where he stopped for a short time before beginning his drive back towards Conecuh County. DEA SA Ott contacted the Montgomery Police Department (MPD) and advised them that **HOWARD** would be traveling through Montgomery and might be in possession of a large amount of methamphetamine (ICE). MPD marked units located **HOWARD**'s vehicle on Interstate 85 near downtown Montgomery and performed a traffic stop on the vehicle. Officers made contact with **HOWARD** who was the driver of the vehicle. As the office er was walking back to his patrol vehicle to check **HOWARD**'s license status, a male got out of the passenger side of the vehicle and began ignoring officers' commands to re-enter **HOWARD**'s vehicle. As officers struggled to take the male into custody, **HOWARD** fled the scene and eventually escaped the pursuing officers. Phone ping data showed that **HOWARD** returned to Conecuh County the following day. **HOWARD** told a friend about the traffic stop in Montgomery and that he had thrown a large bag of methamphetamine out of his vehicle while officers were chasing him through

(Continued)

downtown Montgomery. He also told the friend that he had ordered the male passenger to get out of the vehicle and distract officers so he could escape.

On August 5, 2017, agents observed via phone ping data that **HOWARD** again traveled to Columbus, Georgia, and stayed a short time before beginning his drive back to Conecuh County, Alabama. SA Ott contacted Deputies with the Conecuh County Sheriff's Office and advised of **HOWARD**'s travel and expected return to Evergreen, Alabama with a large amount of methamphetamine. Shortly after midnight on August 6, deputies located **HOWARD**'s vehicle as he exited the interstate in Conecuh County. Deputies activated their emergency lights in an attempt to stop **HOWARD**'s vehicle. **HOWARD** fled briefly before being successfully stopped, but not before his front seat passenger fled from the moving vehicle into a wooded area. Deputies remained with **HOWARD** and searched his vehicle subsequent to a positive canine alert. They located a large amount of United States currency concealed within a baby car seat in the back seat of his vehicle.

On August 11, 201[7], the CS made another controlled buy of methamphetamine (ICE) in Conecuh County from **HOWARD.**

On August 31, 2017, agents observed via location data for **HOWARD**'s cell phone that he had traveled from Opp, Alabama to Atmore and was presently at the Poarch Creek casino. An Atmore Police Department detective located **HOWARD**'s vehicle in the casino parking lot and observed **HOWARD** leave the parking lot and drive onto Interstate 65 (I-65) northbound. Upon entering I-65, a marked Poarch Creek Police Department (PCPD) vehicle attempted a traffic stop of **HOWARD**'s vehicle. **HOWARD** fled from officers and attempted to crash into them before his vehicle was disabled in the median of the interstate. While fleeing officers, the marked PCPD officer observed **HOWARD** throw a white bag from the driver window of his vehicle. Once **HOWARD**'s vehicle was disabled, officers took **HOWARD** into custody. Following the arrest, officers walked to the location where **HOWARD** discarded the bag and located a white bag containing approximately an ounce of cocaine and a small amount of marijuana.

While in custody after his arrest, **HOWARD** has telephone contact with a female via jail calls. He told this female that a male individual, whom he identified to the female, had all of the "other stuff" and for the female not to give anyone any money. The female placed the male on the phone and **HOWARD** told him how to "cut" and sell the remaining methamphetamine they had on hand and to collect money owed to  **HOWARD** for previous debts and to give the money to the female.

(Doc. 26, PageID. 66-68).

During the course of his guilty plea proceeding on December 20, 2018, Howard was asked by the Court whether he had discussed the indictment and the case in general with his attorney, whether he was satisfied with his attorney's advice, representation, and counsel, whether he had reviewed the plea agreement with his attorney before he signed it, and whether he understood the terms of his plea agreement; as to each of these inquiries, Howard replied in the affirmative. (*See* Doc. 51, PageID. 261-62). He confirmed two times that no one had made any promises or assurances of any kind that were not written down in his plea agreement to get him to plead guilty and specifically informed the Court that no one had threatened him or in any way forced him to plead guilty. (*See id.,* PageID. 262-63).[8] Howard also acknowledged his understanding that he could not change his plea back to not guilty simply because he did not like the sentence he received. (*Id.,* PageID. 263). The Court then informed Howard of the following:

> If you enter a plea of guilty to count one and if I find that there are sufficient facts from which to find you guilty of count one, the maximum punishment that could be imposed upon you would be a term of life imprisonment without parole[.]

(*Id.,* PageID. 263). Howard expressly stated he understood the maximum term of imprisonment he was facing (*see id.,* PageID. 264) and, as well, acknowledged his understanding that no one, including his attorney and the Court, could know exactly what the advisory sentencing guidelines would require in his case until the presentence

---

[8]    The First Step Act was enacted one day after Howard entered his counseled guilty plea, that is, on December 21, 2018. *See United States v. Garcia,* 2019 WL 7503482, *1 (11th Cir. July 9, 2019).

report was completed (*see id.,* PageID. 265) and that ultimately any estimate given by

his attorney could still be wrong given that the sentence is ultimately for the judge to

determine (*see id.,* PageID. 265-66). Howard acknowledged all constitutional rights he

was waiving by entering a plea of guilty as well as the appeal waiver. (*See id.,* PageID.

266-68).

> THE COURT: All right. Mr. Howard, to obtain a conviction of you at trial, the government would have to show several things all beyond a reasonable doubt and by competent evidence. They would have to show you and at least one other person in some way or manner agreed to accomplish a common and unlawful plan, and the common and unlawful plan in this instance was to possess and possess with intent to distribute methamphetamine, what's commonly called ice. And that you, knowing the unlawful purpose of the plan—that is, not by way of mistake or accident, but fully understanding what you were planning to do—willfully joined in the plan on at least one occasion. Do you understand what it is the government would have to prove beyond a reasonable doubt and by competent evidence to obtain a conviction of you at trial as to count one?

> THE DEFENDANT: Yes.

> THE COURT: Mr. Howard, before I may accept a plea of guilty from you, I must ask you some questions to satisfy myself that you are in fact guilty.

> Mr. Howard, are you the Nathaniel Tyrone Howard listed in count one of the indictment?

> THE DEFENDANT: Yes, sir.

> THE COURT: Mr. Howard, between July the 1st of 2017 and August the 31st of 2017, were you in and around Conecuh County, Alabama?

> THE DEFENDANT: Yes, sir.

> THE COURT: I take judicial notice that's in the Southern District of Alabama.

And during that time did you and at least one other person knowingly and intentionally—that is, not by way of mistake or accident—come to an understanding that you and they would act together in some way or manner to possess 50 or more grams of what's commonly called ice methamphetamine?

THE DEFENDANT:  Yes.

THE COURT: And was the plan to take this methamphetamine and to distribute them –that is, to transfer it from your possession or their possession to the possession of someone else, whether or not there was any money that was going to change hands or not?

THE DEFENDANT:  Yes.

THE COURT:  Are you satisfied, Counselor, with that factual basis?

MS. GRIFFIN:  I am, Your Honor. And I would ask the Court to incorporate the factual resume, which he has signed, indicating the United States could prove those facts beyond a reasonable doubt that are set forth in the factual resume?

THE COURT:  Okay. Are you satisfied, Mr. Pitters?

MR. PITTERS:  I am satisfied as counsel for the defendant, Your Honor.

THE COURT:  All right. Mr. Howard, to the charge in count one, how do you plead, guilty or not guilty?

THE DEFENDANT:  Guilty.

THE COURT:  It is the finding of the Court in the case of the United States versus Nathaniel Tyrone Howard that the defendant is fully competent and capable of entering an informed plea, and that the defendant is aware of the nature of the charge and the consequences of the plea, and the plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense.

The plea is therefore accepted, and the defendant is now adjudged guilty as to count one.

(*Id.,* PageID. 268-71).

The draft PSR, prepared on February 8, 2019, and published on February 11, 2019 (*see* Doc. 29), calculated the sentencing guidelines based upon the relevant conduct drug quantity (*see id.,* PageID. 89 (reflecting a base offense level of 32 because the total amount of converted drug weight [methamphetamine, cocaine, and marijuana] for which Howard was held responsible involved at least 3,000 kilograms)), combined with enhancements (that is, upward adjustments) and downward adjustments (*see id.,* PageID. 89-90). Howard was given a four-level increase (+4) based on his role as an organizer or leader of the criminal activity, and a two-level increase (+2) because he recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer (*id.*); therefore, Howard's adjusted offense level was 38 (*id.*, PageID. 90) but because he was given a three-level decrease for acceptance of responsibility, his total offense level was 35 (*see id.*). Based on a total offense level of 35 and a criminal history category of IV (*id.*, PageID. 96), the guideline range of imprisonment was determined to be 235 to 293 months (*id.,* PageID. 101). The draft PSR also clearly reflected a statutory minimum term of imprisonment of 15 years (with the maximum term of imprisonment being life) for possessing with intent to distribute methamphetamine. (*Id.,* PageID. 84 & 101).

Sentencing was originally set for March 18, 2019 (Doc. 28); however, sentencing was continued on five occasions, based on three motions filed by counsel for Howard (*see* Docs. 33, 35 & 37), one filed by the government (Doc. 39), and a final *sua sponte* continuation by the Court (*see* Docket Sheet Entry for September 5, 2019 (rescheduling sentencing for October 7, 2019)). The undersigned notes the following contents of the

Defendant's first motion for a continuance (*see* Doc. 33, PageID. 131 ("Upon receiving the Pre-Sentence Report and more importantly the estimated sentencing guidelines Mr. Howard was informed that due to the passage of the First Step Act he is no longer categorized as a Career Criminal. [] Th[is] information changes Mr. Howard's view of his Pre-Sentence Investigation report and based on this new information he would like the opportunity to submit the appropriate objections to the United States Probation Office.")) and that of the Government (*see* Doc. 39, PageID. 137 ("The defendant is attempting to cooperate. The parties request that his sentencing be continued for an additional 90 days to allow him to cooperate.")).

Counsel for Howard filed a sentencing memorandum on September 3, 2019 (Doc. 41), therein requesting a downward departure by the Court to a sentence of 60 months (*see id.,* PageID. 141). And, on September 20, 2019, defense counsel interposed numerous objections to the PSI (Doc. 42).

> 1.     The Defendant objects to the representations regarding "The Offense Conduct", specifically paragraph 6: he disputes that Robert Earl Daw was "a middle-man" for the sale of methamphetamine for the defendant and Cortez Dees. The Defendant objects to the prosecution making any connection involving him with Cortez Dees as he had no illicit narcotics activity or other relationship with Cortez Dees.

> 2.     The Defendant objects to paragraphs 14 and 20 regarding the representation about the drug quantity. The defendant contends that 190 grams of methamphetamine is erroneous. Defendant contends that the correct quantity is 54 grams plus 24.6 grams for a total of 78.6 grams.

> 3.     The Defendant objects to paragraph 20 relative to the computation of his base offense level to include cocaine (29.6 grams) and marijuana (8.9 grams). Of paramount importance, the defendant was indicted in a one count indictment that alleged his being [in] a conspiracy to "possess with intent to distribute a Schedule II Controlled Substance, to wit: methamphetamine.["]

4.      The defendant objects to paragraph 23: []Adjustment for Role in the Offense . . . four (4) level role enhancement as "an organizer or leader of a criminal activity . . . ." The defendant contends that he was the sole defendant to a one count indictment. There are no co-defendants. There is Robert Earl Daw who was indicted in a separate companion case. The defendant submits that Daw was indicted pursuant to his identifying him to law enforcement officers in his proffer. To the defendant's knowledge there has been no other indictment brought against any other alleged co-conspirators. Accordingly, the defendant objects to the representation that he "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive" such that he should not be assessed +4 points for adjusted Role in the Offense.

5.      The Defendant objects to paragraph 24 "Adjustment for Obstruction of Justice". The defendant avers that he was indicted in the Circuit Court for Escambia County and all charges against him, including that of attempting to elude[,] were nol prossed.

6.      The defendant objects to paragraph 46 regarding his Criminal History Computation, specifically with respect to his being assesse[d] 1 point for his May 12, 2017 Use/Possess Drug Paraphernalia.

(Doc. 42, PageID. 144-45).

The draft PSR (Doc. 29), was revised three times, once on February 20, 2019, then on September 28, 2019, after the Defendant interposed his objections thereto, and, finally, on October 7, 2019 (*see* Doc. 30, PageID.171; *compare id. with* Doc. 29 (draft PSI prepared February 8, 2019)), the date of sentencing (*see* Doc. 45), the last revision reflecting the agreement of the parties placed on the record during sentencing to resolve all of the Defendant's objections to the initial draft reports (*compare* Doc. 30, PageID. 176-85 & 188; and Doc. 45, PageID. 206-07 *with* Doc. 29, PageID. 89-98 & 101) and Doc. 42 (defendant's objections)). Counsel for the parties specifically informed

the Court during sentencing on October 7, 2019,[9] that they had resolved all objections

interposed by defense counsel to the initial draft reports, as follows:

> On Page 6 of the pretrial services report that was revised on September 24th of 2019, Page 6, Paragraph 20, the parties would agree that the quantity of drugs for which he is held accountable pursuant to the agreement is a Level 30 instead of a Level 32.

> As to the next page, Page 7, Paragraph 29, that would change the total offense level from a 35 to a 33. As to the sentencing range, Page 18, Paragraph 87, the total offense level would be a 33. The Criminal History Category of IV. And the guideline imprisonment range would be 188 to 235 months.[10]

> And the parties have agreed that if the defendant stipulates and withdraws his pending objections, that would be the agreement of the parties.

(Doc. 45*, PageID. 206-07; see also id.,* PageID. 207 (Howard's attorney advises the

Court that is the agreement and Howard himself informs the Court he understands the

agreement and that it represents his agreement); *compare id. with* Doc. 30, PageID.

---

[9]    The hearing began with retained defense counsel making an oral motion to withdraw at sidebar. (*Id.,* PageID. 203; *see also id.,* PageID. 203-04 ("[T]he family, quite frankly, wants me to be fired, and the defendant doesn't think that I am giving him effective representation of counsel. And there's nothing I can do about his criminal history and he does not understand that.")). The Court then conducted an *ex parte* conversation with Howard's attorney (*see id.,* PageID. 204), after which the sentencing hearing resumed (*see id.*).

[10]    As referenced above, the draft reports reflected a guidelines base offense level of 32 because the total amount of converted drug weight for which Howard was held responsible exceeded 3,000 kilograms (*see* Doc. 29*, PageID. 89) and, based on the other enhancements (*see id.,* PageID. 89-90 (reflecting a four-level increase for being an organizer/leader of a criminal activity and a two-level increase for creating a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer)), an adjusted offense level of 38 (*id.,* PageID. 90). Based on the downward adjustments for acceptance of responsibility, Howard's total offense level in the draft PSI reports was a 35. (*Id.*). Combining Howard's total offense level of 35 with his criminal history category of IV (*see id.,* PageID. 96), the draft PSI reports reflect a guideline imprisonment range of 235 to 293 months (*id.,* PageID. 101).

176-83 & 188 (final PSR reflects a revised total offense level of 33—after all calculations, that is, a determination of the base offense level and then applying all enhancements and downward adjustments—and a criminal history category of IV, resulting in a guidelines sentencing range of 188 months to 235 months)). Upon questioning by the Court, Howard's attorney advised that he had discussed the PSR with his client and Howard explicitly stated that he understood the contents of the presentence report. (*Id.,* PageID. 206). In addition, defense counsel confirmed for the Court the two prior felony drug convictions contained in the Information filed by the Government on November 28, 2018 (*see id.,* PageID. 208; *compare id. with* Doc. 23),[11] one of those convictions being out of this Court in 2006 and which Howard explicitly confirmed was correctly noted in the record (*id.,* PageID. 209; *see also* PageID. 210 (Howard specifically acknowledged the other conviction referenced in the Information out of Monroe County, Alabama)).[12]

The Court then calculated Howard's potential guideline sentence. (*Id.,* PageID. 213-14).

We start this calculation with a base offense level of 30. Mr. Howard receives a four-level enhancement because he was an organizer

---

[11] The Assistant United States Attorney advised the Court that the First Step Act made one of Howard's convictions alleged in the November 28, 2018 Information "not countable[]" but that she wanted Howard to confirm the two convictions because both were relevant for purposes of his guidelines calculation. (*See id.,* PageID. 208).

[12] In discussing the prior convictions, Defendant attempted to raise an objection to the assignment of one point for a conviction out of Conecuh County (*see id.,* PageID. 210); however, Howard quickly backtracked on this objection, acknowledging its waiver as a result of his agreement with the Government on drug quantity (*id.,* PageID. 211-12; *see also id.,* PageID. 212 ("THE COURT: So it is your position, Mr. Howard, that we're not going to argue whether Paragraph 45 should be applied or not? THE DEFENDANT: Correct.")).

or leader of a criminal activity that involved five or more participants or was otherwise extensive.

Mr. Howard also receives a two-level enhancement because he recklessly created a substantial risk of death or serious bodily harm to another person in the course of fleeing from a law enforcement officer.

This produces an adjusted offense level of 36. Mr. Howard is entitled to a three-level reduction for acceptance of responsibility, yielding a total offense level of 33.

Mr. Howard has seven criminal history points, which places him in Criminal History Category IV. The guideline imprisonment range at this level is 188 to 235 months.

Based on the United States' enhancement information regarding Mr. Howard's prior convictions for controlled substances [], there is a statutory mandatory minimum of 15 years.

(*Id.*) No objections were interposed to the Court's calculations (*See id.,* PageID. 213-14). Several of Howard's family members addressed the Court regarding Howard's character and requested leniency from the Court with respect to sentencing. (*Id.,* PageID. 214-22). The Defendant also addressed the Court, admitting he "helped" some unidentified "them" get drugs so that he could use drugs but asking for another chance at life to spend time with his mother, 9 children and 8 grandchildren. (*See id.,* PageID. 223-24).

The Assistant United States Attorney highlighted the numerous occasions in the past that Howard had the chance to get his life back together, only to fall back into drug activity, and the three separate occasions in this case when he fled from police before urging the Court to impose a low-end guidelines sentence of 188 months. (*See id.,* PageID. 224-26). "The only variance that could be given this matter because of the mandatory minimum is between 180 months, which is 15 years, and eight months [that

is, 8 months less than the low-end guideline amount of 188 months]. He's done nothing to be deserving of that. Were this his first time or second time before a Court, maybe. But he is not deserving of it. He has earned a sentence of 188 months, and we respectfully ask the Court to impose it." (*Id.,* PageID. 225-26).[13] The Court rejected the Assistant United States Attorney's request for a 188-month sentence and gave Howard the very small variance of 8 months to which he was entitled, noting that was the most he could do for the Defendant since he was "required by Congress to sentence [him] to the mandatory minimum [of 15 years]." (*Id.,* PageID. 229).[14] "Pursuant to the Sentencing Reform Act of 1984, it is the judgment of this Court that the defendant, Nathaniel Tyrone Howard, is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of 180 months as to Count One." (*Id.,* PageID. 230). The Court advised Howard that he had 14 days to appeal his sentence and that his attorney, Mr. Pitters, could assist him in filing the notice of appeal. (*See id.,* PageID. 232). In conclusion, the Court also made the determination that even in the event the guidelines were incorrectly calculated, the Court still would have imposed the 180-month sentence.

---

[13]     (*See* Doc. 45, PageID. 224 ("[T]he defendant pled guilty to life without parole because of his criminal history. Those were the guidelines. After his guilty plea, the law changed and his guidelines are now mandatory minimum 15 and a guideline range of 188 to 235.")).

[14]     The Court gave Mr. Howard this consideration because of the number of individuals who spoke on his behalf during sentencing, the Court specifically recognizing that Howard was not simply the sum of the paperwork before the Court for its consideration. (*See id.,* PageID. 228 & 230; *compare id. with id,* PageID. 232("The Court finds that the advisory guideline range is not appropriate to the facts and circumstances of this case and, for that reason, I make the variance that I did based on the personal history and characteristics of the defendant and what I heard today here in court.")).

(*See id.,* PageID. 234). Written judgment was signed on October 21, 2019 and entered on the docket the following day, October 22, 2019. (*See* Doc. 43).

On October 7, 2020, Howard filed his motion to vacate in this Court (Doc. 48), claiming that his trial attorney provided ineffective assistance during the plea bargaining stage of his proceedings because at the time he accepted the plea he believed he would be subject to a mandatory life sentence if he proceeded to trial, only to find out at sentencing that only one of the two convictions listed in the Information filed against him on November 28, 2018 could be used against him such that he was subject to a 15-year mandatory minimum sentence, the same sentence he could have received had he chosen to proceed to trial. (*See id.,* PageID. 241 & 245-48). According to Howard, had his counsel advised him prior to his plea/sentencing that he was no longer facing a life sentence, he would have proceeded to trial. (*Id.,* PageID. 247). Howard also contends that his attorney was ineffective at sentencing in stating on the record that there was nothing he could do to combat the sentencing enhancements, as he should have objected to the 4-level leader/organizer enhancement and the 2-level obstruction of justice enhancement. (*See id.,* PageID. 248-51).[15]

---

[15] Howard appears to have "thrown in" on the last substantive page of his motion to vacate (indeed, in the last sentence of the motion) the conclusory assertion that "he informed his counsel to file a direct appeal," in a base attempt to obtain an evidentiary hearing. (Doc. 48, PageID. 252 ("Howard also contends that he has made statements and allegations outside the record, i.e., he informed his counsel to file a direct appeal, therefore, per *Strickland,* an evidentiary hearing is required.")). However, because he offers this assertion merely as support for his effort to vacate his plea and sentence and does not connect it with an attempt to pursue an out-of-time appeal from the existing judgment, this conclusory assertion entitles him to no relief.

**CONCLUSIONS OF LAW**

Section 2255 reads, in relevant part, as follows: "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). Thus, as the language of § 2255(a) makes clear, "the grounds for collateral attack on a final judgment . . . are limited[,]" *Gayle v. United States,* 2020 WL 4339359, *3 (S.D. Fla. July 28, 2020) and are "reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Lynn v. United States,* 365 F.3d 1225, 1232 (11th Cir.) (citations and internal quotation marks omitted), *cert. denied,* 543 U.S. 891, 125 S.Ct. 167, 160 L.Ed.2d 154 (2004). Petitioner's sole contention is that constitutionally ineffective assistance of trial counsel entitles him to the relief afforded by 28 U.S.C. § 2255. (*See* Doc. 48).

A.    **Did Howard's Retained Trial Attorney Provide Constitutionally Ineffective Assistance?** To establish a claim of ineffective assistance of counsel, a petitioner is required to show (1) that his attorney's representation fell below "an objective standard of reasonableness" and (2) that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been

19

different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80

L.Ed.2d 674 (1984); *see also Jones v. United States,* 478 Fed.Appx. 536, 539-540 (11th

Cir. Sept. 23, 2011) ("To make a successful claim of ineffective assistance of counsel, a

defendant must show that: (1) his counsel's performance was deficient; and (2) the

deficient performance prejudiced his defense."). "The burden of persuasion is on a

section 2255 petitioner to prove, by a preponderance of the competent evidence, both

that counsel's performance was unreasonable, and that []he was prejudiced by that

performance." *Demar v. United States,* 228 Fed.Appx. 940, 950 (11th Cir. Jun. 21,

2007) (quotation marks, brackets and citations omitted); *see also Johnson v. Alabama*,

256 F.3d 1156, 1176 (11th Cir. 2001) ("The petitioner bears the burden of proof on the

'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both

prongs must be proved to prevail."), *cert. denied sub nom. Johnson v. Nagle*, 535 U.S.

926, 122 S.Ct. 1295, 152 L.Ed.2d 208 (2002).[16]

> The performance prong of the ineffective assistance standard
> entails a deferential review of counsel's conduct. In assessing the
> reasonableness of counsel's performance, courts must indulge a strong
> presumption that counsel's conduct falls within the wide range of
> reasonable professional assistance.[17] Thus, the Sixth Amendment does
> not require criminal defense attorneys to take a nothing to lose approach
> and raise every available nonfrivolous defense.

---

[16]     It is proper in considering claims made by a federal prisoner under § 2255 to look
for guidance from cases discussing claims raised by state prisoners under 28 U.S.C. § 2254.
*See Hagins v. United States,* 267 F.3d 1202, 1205 (11th Cir. 2001) (citing *Holladay v. Haley*,
209 F.3d 1243 (11th Cir. 2000)), *cert. denied*, 537 U.S. 1022, 123 S.Ct. 545, 154 L.Ed.2d 432
(2002).

[17]     In order to satisfy the first prong, "the petitioner must establish that no competent
counsel would have taken the action that his counsel did take[.]" *Hall v. Thomas,* 611 F.3d 1259,
1290 (11th Cir. 2010) (quotation marks and citation omitted).

With respect to prejudice, courts ask whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*Means v. Secretary, Dep't of Corrections,* 433 Fed.Appx. 852, 855 (11th Cir. July 12, 2011) (internal quotation marks and citations omitted; footnote added), *cert. denied,* 565 U.S. 1217, 132 S.Ct. 1580, 182 L.Ed.2d 198 (2012); *see also Pair v. Cummins,* 373 Fed.Appx. 979, 981-982 & 982 (11th Cir. Apr. 20, 2010) ("The performance prong of an ineffective assistance claim requires the petitioner to show that, considering all the circumstances, his attorney's representation fell below an objective standard of reasonableness. The standard is that of a reasonable attorney, not a paragon of the bar or an Aristotle or a Clarence Darrow. Moreover, judicial review of an attorney's performance is highly deferential, and the court must eliminate the distorting effects of hindsight and evaluate performance from the attorney's perspective at the time the challenged conduct occurred. In so doing, the court must indulge a strong presumption that the attorney's conduct was objectively reasonable. A petitioner fails to overcome that presumption if the challenged conduct might be considered sound trial strategy. . . . Pair must [also] establish prejudice. It is not enough for him to show that his counsel's deficient performance had some conceivable effect on the jury's verdict. Instead, Pair must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (internal quotation marks and citations omitted)).

Given the two-prong nature of the test for adjudicating ineffective-assistance-of-counsel claims, "'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'" *Johnson, supra,* 256 F.3d at 1176 (citation omitted); *see also Chandler v. United States,* 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc) ("Given the strong presumption in favor of competence, the petitioner's burden of persuasion—though the presumption is not insurmountable—is a heavy one." (citations omitted)), *cert. denied,* 531 U.S. 1204, 121 S.Ct. 1217, 149 L.Ed.2d 129 (2001). When applying the *Strickland* standard, it is clear that courts "are free to dispose of ineffectiveness claims on either of its two grounds." *Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 1998) (citation omitted), *cert. denied*, 527 U.S. 1008, 119 S.Ct. 2347, 144 L.Ed.2d 243 (1999); *see also Adamson v. United States,* 288 Fed.Appx. 591, 594 (11th Cir. Jul. 29, 2008) ("The defendant must satisfy both prongs of this test to show a Sixth Amendment violation; if the defendant fails to demonstrate one of these prongs sufficiently, we do not need to address the other."), *cert. denied,* 555 U.S. 1010, 129 S.Ct. 526, 172 L.Ed.2d 385 (2008); *Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004) ("[O]nce a court decides that one of the requisite showings has not been made it need not decide whether the other one has been.").

**1.      Trial Counsel's Performance During the Plea Bargaining Process**.

Howard contends that his trial attorney provided ineffective assistance during the plea bargaining stage of his proceedings because at the time he accepted the plea he believed he would be subject to a mandatory life sentence if he proceeded to trial, only

to find out at sentencing that only one of the two convictions listed in the Information filed against him on November 28, 2018 could be used against him such that he was subject to a 15-year mandatory minimum sentence, the same sentence he could have received had he chosen to proceed to trial.  Howard goes on to contend that had his counsel advised him prior to his plea/sentencing that he was no longer facing a life sentence, he would have proceeded to trial.

This claim by Howard is not well-taken. First, Petitioner's attorney, Armando Pitters, was not deficient because the advice he gave to Howard during the plea bargaining process and on the date the change of plea was entered was entirely correct. Indeed, even before Howard executed the factual resume and the plea agreement on December 11, 2018 (*compare* Doc. 26, PageID. 69 *with* Doc. 27, PageID. 83), and subsequently entered his guilty plea on December 20, 2018 (*see, e.g.,* Doc. 28), he knew that he was facing a statutory life sentence without parole if convicted after trial due to two prior convictions for "a drug felony offense" because the Information filed by the Government on November 28, 2018 (Doc. 23) supplied him with this knowledge.[18] Thus, Howard's belief that he was facing a statutory mandatory life sentence (if convicted following a trial) before and at the time of the change of plea, as

_____

[18]        At the time Howard entered his change of plea, "felony drug offense" was defined as "an offense that is punishable by imprisonment for more than one year under any law . . . that prohibits or restricts conduct relating to narcotic drugs, marijuana, anabolic steroids, or depressant or stimulant substances." 21 U.S.C. § 802(44); *see also United States v. Garrett,* 292 Fed.Appx. 3, 7 (11th Cir. Aug. 1, 2008) (recognizing that 21 U.S.C. § 802(44) defined felony drug offense as "an offense that is punishable by imprisonment for more than one year under any law of the United States or a state."). Howard's prior convictions (*see* Doc. 23) met that definition.

informed by Pitters, was entirely correct. Accordingly, Pitters was not constitutionally deficient in advising Howard to plead guilty (in exchange for a low-end guidelines sentence recommendation by the government), given that Petitioner's two prior drug convictions met the definition of a "felony drug offense" and qualified him for a mandatory life sentence, if convicted following trial. In other words, Pitters' accurate advice obviously does not fall below objective standard of reasonableness so as to meet the performance prong of the *Strickland* test. *See Strickland, supra,* 466 U.S. at 687-88, 104 S.Ct. at 2065. Moreover, any failure by Pitters to anticipate or predict a change in the law subsequently wrought by the First Step Act on December 21, 2018 (or that the President would sign the First Step Act after Howard's guilty plea), does not render his performance deficient in light of the "wall of binding precedent that shuts out any contention that an attorney's failure to anticipate a change in the law constitutes ineffective assistance of counsel." *United States v. Ardley,* 273 F.3d 991, 993 (11th Cir. 2001) (Carnes, J., concurring) (citations omitted); *see also Spaziano v. Singletary,* 36 F.3d 1028, 1039 (11th Cir. 1994) ("'[R]easonably effective representation cannot and does not include a requirement to make arguments based on predictions of how the law may develop.'"), *cert. denied,* 513 U.S. 1115, 115 S.Ct. 911, 130 L.Ed.2d 793 (1995). Finally, to the extent Petitioner suggests that he would have proceeded to trial had counsel informed him prior to his plea on December 20, 2018, that he was no longer facing a life sentence, such argument is patently specious and has no basis because it was clear that at all times prior to December 21, 2018, the effective date of the First Step Act, Petitioner was facing a life sentence.

**2.** **Trial Counsel's Performance as it Relates to Sentencing**.

      **a.** **First Step Act.** Initially, the Court turns its attention to Howard's suggestion that Pitters was deficient in failing to inform him fully of the First Step Act and how that statute changed the duration of his sentence at his sentencing proceeding, stating that he would have opted to proceed to trial had he been more fully informed at this stage. (*See* Doc. 48, PageID. 245-48). Even if the undersigned assumes Pitters was deficient in this regard—which would require ignoring Pitters' negotiations with the United States to ensure it would not pursue a higher drug quantity, his presentation of multiple witnesses to advocate for a lower sentence, and how Pitters secured the lowest possible sentence for his client[19]—Howard cannot establish prejudice. First, Howard cannot show that he was prejudiced by counsel's purported failure to advise him at sentencing of the change in the law because the Court, before it sentenced Howard, informed him that the statutory mandatory minimum term of imprisonment in his case was 15 years. (*See* Doc. 45, PageID. 213). In other words, if Howard was unaware of the change in the law before the commencement of sentencing, he was aware of the change before sentence was imposed and, therefore, cannot establish prejudice. In addition, that prejudice is absent is clear because Howard had no absolute right to withdraw his plea before sentencing (or on the date sentencing) and proceed to trial,

---

[19] This Court would also have to ignore the contents of Howard's March 15, 2019 motion to continue sentencing (*see* Doc. 33, PageID.131 (in light of the provisions of the First Step Act, Mr. Howard's view of his PSI changed and he, therefore, requested additional time to submit objections to the United States Probation Office)), since the language contained in that motion undercuts Howard's suggestion that he did not know until sentencing that he was no longer facing a life sentence.

*United States v. McCarty,* 99 F.3d 383, 385 (11th Cir. 1996) ("[A] defendant enjoys no absolute right to withdraw a guilty plea before sentencing.").[20] Instead, a court may grant a motion to withdraw a plea only if a defendant establishes a "'fair and just reason' for doing so[,]" *United States v. Marc,* 806 Fed.Appx. 820, 821 (11th Cir. Mar. 25, 2020) (citations omitted), which requires the court to consider the totality of circumstances surrounding the plea, including the following factors: "'(1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea.'" *United States v. Weaver,* 275 F.3d 1320, 1328 (11th Cir. 2001) (citation omitted), *cert. denied,* 536 U.S. 961, 122 S.Ct. 2666, 153 L.Ed.2d 840 (2002). Here, Howard has made no attempt to, and cannot, satisfy his burden in this regard.

With respect to the first factor, Howard was represented by Pitters at his plea hearing and testified during that hearing that he had discussed with Pitters—and understood—the charges against him, the possible sentences, and the terms of his plea agreement. Howard also testified that he was satisfied with Pitters' advice, representation and counsel. Given that "[s]tatements made under oath by a defendant during a plea colloquy receive a strong presumption of truthfulness[,]" *Marc, supra,* 806 Fed.Appx. at 822, the undersigned finds the statements made by Howard at the plea hearing to be true because Petitioner makes no discernable argument which

---

[20]     And, indeed, it is clear that at no time has Howard filed a written motion to withdraw his plea nor, at sentencing, did he make an oral request to withdraw his plea of guilty.

establishes that his statements made under oath regarding Pitters were false, *see id.* ("A defendant 'bears a heavy burden' to show that statements made under oath were false."). Thus, close assistance of counsel was available.

As to the voluntariness of Howard's plea, Howard indicated on several occasions that he was pleading guilty freely and voluntarily, specifically confirming two times that no one had made any promises or assurances of any kind that were not written down in his plea agreement to get him to plead guilty and informing the Court that no one had threatened him or in any way forced him to plead guilty. Howard also stated that he understood the charges against him and understood that—based on the then existing law—he was facing a statutory term of life imprisonment without parole following a guilty verdict after a trial. Thus, Howard's only real contention, that his plea was rendered involuntary by the enactment of the First Step Act, is without merit.

> The voluntariness of a guilty plea is determined by considering all the circumstances surrounding the plea, including "the possibility of a heavier sentence following a guilty verdict after a trial." Brady v. United States, 397 U.S. 742, 749, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). "[A] voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rests on a faulty premise." Id. at 757, 90 S.Ct. 1463 (emphasis added). This conclusion  is true when the defendant's decision to plead guilty was made in reliance on his lawyer's then-correct advice about the applicable law. Id.

*Marc, supra,* 806 Fed.Appx. 822. Here, as established above, Pitters' advice to Howard, that he faced a life sentence without parole if convicted following a trial, was correct advice when Howard entered his plea. Thus, "[t]hat the passage of the First Step Act might have changed [Howard's] calculus about the benefits of pleading guilty [since he no longer faced a statutory term of life imprisonment without parole] does not render

retroactively his plea involuntary or unknowing." *Marc, supra,* 806 Fed.Appx. at 823 (citation omitted).

Because Howard has shown neither that he received less than the close assistance of counsel before or during his plea nor that his plea was unknowing and involuntarily entered, this Court need not discuss the remaining two factors, *Marc, supra,* citing *United States v. Gonzalez-Mercado,* 808 F.2d 796, 801 (11th Cir. 1987) (recognizing that where a defendant dose not satisfy the first two factors, the court need not give "particular attention" to the remaining factors), and instead need only observe that since there existed no basis for Howard to withdraw his guilty plea, he cannot establish that he was prejudiced by Pitters' purported failure to advise him at sentencing of the change in the law.

      **b.**    **Enhancements.** Howard claims that his trial attorney provided constitutionally ineffective assistance during the sentencing hearing in failing to object on the record to the 4-level leader/organizer enhancement and the 2-level obstruction of justice enhancement. (*See* Doc. 48, PageID. 248-51).

      Howard's trial attorney filed numerous written objections to the PSI before the sentencing hearing, including the enhancements about which Howard now complains. (*See* Doc. 42, PageID. 144-45). Counsel only withdrew those objections—with Howard's consent—as part of a negotiated agreement with the United States to ensure that it would not pursue a higher drug quantity. (*See* Doc. 45, PageID. 206-07). Thus, having consented to the deal on the record in open court (*id.,* PageID. 207 ("THE COURT:  All right. Mr. Howard, do you understand that agreement? Is that your

agreement, as well? THE DEFENDANT: Yes.")), Howard cannot now claim his attorney was deficient for acting in accordance with his expressed wishes, particularly in light of his wholesale speculative musings that the United States never would have been able to establish a higher drug quantity had he not made that deal. Besides, Petitioner cannot establish any prejudice because, in light of his criminal history, 15 years was the statutory mandatory minimum prison term the Court could have imposed and 15 years is the very sentence Howard received. In other words, Howard can argue all day about enhancements and drug quantity but those arguments would not have changed the outcome of his sentencing hearing given that the statutory mandatory minimum term would have remained 15 years (the sentence he received). (*See* Doc. 45, PageID. 228, 229 & 230 ("[A]lthough you're no longer subject to potentially life imprisonment as a career offender, your charge carries with it a mandatory minimum that I don't have any discretion about. . . . Ms. Griffin correctly points out that the biggest variance that I can give you [from the low-end of the sentencing guidelines]—and I'm going to give it to you—is—it's small. I am required by Congress to sentence you the mandatory minimum, and it's my intention to do that. . . . Pursuant to the Sentencing Reform Act of 1984, it is the judgment of this Court that the defendant, Nathaniel Tyrone Howard, is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of 180 months [15 years] as to Count One.").[21]

---

[21] Howard's suggestion that he received no benefit from pleading guilty is not correct. Howard seems to believe that the only term of imprisonment to which he was subject was 180 months (that is 15 years) regardless of whether he pled guilty or proceeded to trial. This belief is incorrect because had Howard been convicted following a jury trial, he would have been facing a prison term well in excess of 15 years under the sentencing guidelines given his
(Continued)

**B.**    **Certificate of Appealability**. The Magistrate Judge recommends that the Court deny Howard's motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255. Moreover, pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2). Here, Howard's habeas petition is being denied on the merits, such that a COA should issue only when the Petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[,]" *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000); *see also id.* at 483-484, 120 S.Ct. at 1603-1604 ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that matter, agree

---

past criminal history, the applicable enhancements, and the fact that he would receive no adjustments for acceptance of responsibility. (*Compare, e.g.,* Doc. 29, PageID. 90 (reflecting an adjusted offense level of 38 but a total offense level of 35 based on downward adjustments for acceptance of responsibility) *with id.,* PageID. 96 & 101 (a total offense level of 35, itself, combined with a criminal history category of IV, renders a guideline sentencing range of 235 to 293 months)).

that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"); *see Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether  (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'"). Here, with respect to all of Howard's ineffective assistance of counsel claims, it is recommended that the Court find that reasonable jurists could not debate whether his § 2255 habeas petition should be resolved in a different manner or that the issues presented are adequate to deserve encouragement to proceed further. Accordingly, Petitioner is not entitled to a certificate of appealability with respect to any of his claims.

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation. *Brightwell v. Patterson,* CA 11-0165-WS-C, Doc. 14 (Eleventh Circuit order denying petitioner's motions for a COA and to appeal IFP in a case in which this Court set out the foregoing procedure); *see also Castrejon v. United States,* 2011 WL 3241817, *20 (S.D. Ala. Jun. 28, 2011) (providing for the same procedure), *report and recommendation adopted,* 2011 WL 3241580 (S.D. Ala. Jul. 29, 2011); *Griffin v. DeRosa*, 2010 WL 3943702, at *4 (N.D. Fla. Sept. 20, 2010) (providing for same

procedure), *report and recommendation adopted sub nom. Griffin v. Butterworth,* 2010 WL 3943699 (N.D.Fla. Oct. 5, 2010).

## <u>CONCLUSION</u>

The Magistrate Judge is of the opinion that Nathaniel Tyrone Howard's rights were not violated in this cause and that his request to vacate, set aside or correct his sentence (*see* Doc. 48) should be **DENIED**. Petitioner is not entitled to a certificate of appealability and, therefore, he is not entitled to appeal *in forma pauperis*.

## <u>NOTICE OF RIGHT TO FILE OBJECTIONS</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. Ala. GenLR 72(c)(1) & (2). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the

Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 10th day of February, 2021.

    s/P. Bradley Murray
**UNITED STATES MAGISTRATE JUDGE**